# DECISIONS

OF THE

# SUPREME COURT OF MISSOURI,

FIRST JUDICIAL DISTRICT.

SEPTEMBER TERM, 1837.

---

## BANKS AND WIFE v. MCCARTY AND OTHERS.

Bill in chancery.—A. died, leaving a widow and six daughters, with one of whom complainant intermarried. After complainant received his share of the estate, another daughter died, and her share was divided by the widow, who was also administratrix among the four children at home, omitting complainant. Defendants answer, that the debts which came against the estate, after the first division, more than counterbalanced the share which complainant would have been entitled to under the first division. But the supreme court not being satisfied with the evidence adduced in the court below to sustain the answer, held that the circuit court erred in dismissing the bill, and accordingly reversed the decree.

*Wilson*, for appellant.

The court below upon these facts dismissed the bill of the complainants, and they have appealed, and insist for its reversal upon the following facts. That the court erred in dismissing the bill.

The bill states a case clearly to show that the complainants ought to have been taken in, in the second divide, and states them to arise under the laws as stated in the bill to be in force in Tennessee, and that all the facts in the knowledge of the defendants, they do not deny the law to be such as is stated, and admit tacitly the fact that they were entitled to a divide, but owing to debts &c. they are cut out. Now the debts of the deceased do not prevent them from a divide of the sister's part that died. The bill also endeavors to surcharge the administration account, and shows that the debts spoken

1

of are those not to be charged against the estate; as to one item, the debt due Josiah Standfiel, $100, the proof is clear that it was the debt of her own, and her own settlement shows the whole were debts against her as guardian, and not as administratrix. The first settlement was made in May, 1825, in which settlement she was allowed $267 48, for boarding, clothing and schooling her six children since the death of their father, and then she settled the whole debts of the estate, making debits and credits even. In February, 1823, she was appointed guardian of her children, and continued annually to make return of the names of the slaves she had in her possession as guardian of her children, and made no return of their hire, and no charge for keeping the children. At the May term, 1825, she however returns that she had, on becoming guardian, made a contract with the court to keep, board, clothe, school, &c., for the services of the negroes; and then, for the first time, at November term, 1831, we hear that the estate is unable to pay its debts unless a negro is sold, and thereupon an order is granted to do so, &c. At the August term, 1832, she returns an account, as guardian of those heirs, of upwards of $300, and says *now* and *not before*, that it was money due by the estate. This is disproved by Banks' deposition; it is disproved by the circumstances of the case. Wm. McCarty died in 1818; is it reasonable that creditors will lie still till 1832, and then demand the accounts to be paid? Is it reasonable they should have done so longer than till 1825, when the first settlement was made? These facts show that these last accounts were due by herself, and not by any of the children, because her contract from 1823 to support, &c. for the use of the negroes, gave her no title to charge them with any thing. There then seems to me to be no reason to dismiss the bill; the whole bill is admitted and proved, and there remains not a doubt but the complainants were entitled to a divide with the rest of that part coming to the deceased sister.

*Burden* for appellee:

The defendants answer and state, that true it is that Mary McCarty died, as alleged in the bill, but that the doctor's bill, funeral expenses, and debts that came against the estate since the division to Banks and wife, consumed said Mary's part of said estate, and expressly denies that said complainants are entitled to any thing; the proof consists of the records of Sumner county, and depositions.

Opinion of McGirk, Judge, all the court concurring.

SEPT. TERM, 1837.

Banks and Wife
v.
McCarty & others.

In March, 1836, Banks and wife filed their bill in chancery, in the circuit court of Lafayette county, setting forth that some time about the year 1818, in the county of Sumner, in the State of Tennessee, one William McCarty died intestate, leaving a widow, Mary McCarty, and also six daughters, his legal heirs, &c. The bill also shows that since that time one daughter named Nancy intermarried with the complainant, and that another has been married to one Abner Evans. The bill further shows that the intestate left eight negroes, and that since his death four slaves have been born, remaining the property of the intestate; and also, that the intestate left other personal property, without showing how much. The bill shows that the widow administered on the estate of the intestate, and also, that she was afterwards appointed guardian of the children of the intestate, and that as such guardian she contracted with the county court of Sumner county, to keep and maintain the children free from charge, and for so doing she was allowed to keep or have the services of the slaves without paying hire therefor. The bill also shows that after the marriage of the complainant with one of the intestate's daughters, he received of the guardian one negro woman or girl as his portion of the slaves; and the complainant shortly afterwards came to Missouri to reside. That this division was made by order of the court, and the commissioners making the division, ordered the complainant to pay to the estate forty dollars, the value of the girl being that much over their estimate of the complainant's share. That in the year 1830 or 1831, Mary McCarty, the youngest of the daughters died, intestate, and that some time thereafter the widow and other heirs caused a division of the slaves among them to be made, and that they in this division divided among them the share of the deceased child, without regarding the interest of the complainant and his wife. The bill charges that by the laws of Tennessee, the mother was not entitled to any share of the estate of the child; that the same went to the sisters equally; and also, the bill shows that by the laws of Tennessee the widow of the intestate might take a third for life or a child's part in fee; and that the widow elected to take a child's part, and that by the court aforesaid, the same was allotted to her. The bill prays that the defendants may answer, and that the court will decree that he shall have allowed to him from the defendants, his wife's proportion of the deceased

SEPT. TERM,
1837.

Banks and Wife
v.
McCarty & othr's.

child's property. The widow and three of the children were served with process; Evans and wife live in Kentucky, and as to them, there was a publication. They did not appear nor answer, and as to them, no farther proceeding has been had in the court below. The other defendants answer and admit the facts in the bill as stated. But they set up, by way of bar, that after the said complainant obtained his share, as stated in the bill, debts came against the estate of the intestate, Wm. McCarty, to a considerable amount, equal to the whole amount of the share of the deceased child; and on the order of said court the widow, as administratrix, was directed to sell a slave to pay said debts; that she did sell the same, and paid the debts, and was allowed the amount thereof in a settlement with the court; and that as the complainant got his share before these debts were paid, and without regard to them, that he has got as much as he would have been justly entitled to if his division had not been made till these debts were paid, and after the death of the deceased child. The answers also insist that the widow advanced to the complainant a filly, a bed, a cow, and a reel, and prays judgment whether the complainant is entitled to any thing more. The defendants produced in evidence a certified transcript of the county court of Sumner county, in Tennessee, by which it appears that after the death of the child, Mary McCarty, in 1830, the widow in 1831 presented a petition to the court, alleging that there was not enough in her hands to pay debts without selling a negro; the court ordered a negro to be sold to pay debts; a negro was sold for three hundred dollars; after this, the widow as guardian, and not as administratrix, presented an account for allowance as of debts paid by her as guardian, amounting to two hundred and sixty-nine dollars. The account is presented, signed by her, but it no where appears by the record that the court acted on or allowed the same. It appears by the account, that fifty-two dollars of the same are made up of charges of physicians and funeral expenses for the deceased child; as to the other items, there is nothing in the record nor the items themselves to show whether the debts were debts of the intestate, or debts of the widow or the guardian. This record does not establish the fact set up in the answers, which was, that an amount fully equal to the deceased child's share was lawfully used by the administratrix, in paying the debts of McCarty, the intestate. It may be, and I am of opinion the law is so, that parol proof may be admitted to show the true character of these

debts. It is also proved that one hundred dollars of the debts in the account was a debt due by the widow, contracted in her individual capacity. It was also proved that the complainant did receive of the widow a filly, a bed, a cow, and reel. Whether these things were a part of the intestate's property or not, there is no certain testimony, but the presumption is, that they were not so, but of the property of the widow, which she may perhaps lawfully set up to show that the complainant has already had his just proportion. But this matter is left open for further proof. Upon the testimony as it now stands, the complainant is entitled to something, but how much, I cannot, for want of more proof, pretend to say; what the value of the estate was when the complainant received his share, we have no evidence that is satisfactory. But suppose his slave to be worth, when he received it, four hundred and forty dollars, it overpaid forty dollars, which he paid; then the balance of the children's property would be worth four hundred dollars each, the widow having had her share. There being five children besides his wife, would be two thousand dollars. When Mary died, in 1831, her share might be worth more or less than four hundred dollars. When Mary died, her share would be liable to be divided among the five remaining sisters, the fifth of which is eighty dollars, which the complainant may be entitled to; but as he let the party in Kentucky go, he can only be entitled to recover against the defendants the other three fourths of the eighty dollars, which will be about sixty dollars, and this would justly be subject to his proportion of the funeral expenses of the deceased child, the fifth of which would be something over ten dollars, which leaves him about fifty dollars. Now if the evidence could inform the court that the cow, the bed, &c. were intended to meet the whole of his wife's portion from her father and sister too, I would let the decree stand; but as I do not know this, I think the court must reverse the decree. The same is reversed, with costs.